UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| DEBRA DEARMAN, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 4:08-CV-825 CAS |
| | ) |
| THE DIAL CORPORATION, et al., | ) |
| | ) |
| Defendants. | ) |

**MEMORANDUM AND ORDER**

This matter is before the Court on a motion for summary judgment filed by defendant the Dial Corporation ("Dial"). The motion is fully briefed and ready for decision. For the following reasons, the Court will grant Dial's motion for summary judgment on Counts I through IV of the First Amended Complaint and deny the motion on Count V.

**Background**

Plaintiff was employed by Dial between 1992 and 2005 as a plant financial manager. Defendant Life Insurance Company of North American ("LINA") is the claims administrator for Dial's Short-Term Disability (STD) program, which is self-funded by Dial. LINA is both the insurer and the claims administrator for Dial's Long-Term Disability (LTD) program. Only the LTD program is covered by the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1001, et seq.

Plaintiff was diagnosed with a series of illnesses, beginning with inflamed spinal nerve roots and repetitive stress trauma of both wrists. She was later diagnosed with osteoarthritis and fibromyalgia. She became unable to work full time and later was unable to work at all. She went

on sick leave and applied for STD benefits on December 15, 2003 and applied for LTD benefits in 2004.

Plaintiff's claim for STD benefits as of December 15, 2003 was denied by LINA in 2004 and she reapplied for STD benefits in September 2004. Plaintiff's second claim for STD benefits was granted from September 16, 2004 to March 16, 2005. Plaintiff was terminated from employment with Dial when her STD benefits ended and she was still unable to work.

LINA denied plaintiff's claim for LTD benefits in April 2005 and again in December 2005. Plaintiff appealed and provided additional documentation, but LINA upheld the denial in January 2007. Plaintiff filed a voluntary appeal which was finally resolved by LINA in October 2007 with a final denial of LTD benefits. In the meantime, plaintiff applied for Social Security Disability benefits and in April 2006 received a favorable determination that she was disabled as of December 15, 2003.

**Summary Judgment Standard**

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment shall be entered "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." In ruling on a motion for summary judgment, the Court is required to view the facts in the light most favorable to the non-moving party and must give that party the benefit of all reasonable inferences to be drawn from the underlying facts. AgriStor Leasing v. Farrow, 826 F.2d 732, 734 (8th Cir. 1987). The moving party bears the burden of showing both the absence of a genuine issue of material fact and his entitlement to

judgment as a matter of law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986); Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986); Fed. R. Civ. P. 56(c).

Once the moving party has met its burden, the non-moving party may not rest on the allegations of her pleadings but must set forth specific facts, by affidavit or other evidence, showing that a genuine issue of material fact exists. Fed. R. Civ. P. 56(e). Anderson, 477 U.S. at 257; City of Mt. Pleasant, Iowa v. Associated Elec. Coop., Inc., 838 F.2d 268, 273-74 (8th Cir. 1988). Rule 56(c) "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). Additionally, this Court is "'not required to speculate on which portion of the record the nonmoving party relies, nor is it obligated to wade through and search the entire record for some specific facts that might support the nonmoving party's claim.'" White v. McDonnell Douglas Corp., 904 F.2d 456, 458 (8th Cir. 1990) (quoted case omitted).

**Facts**

Plaintiff began working for Dial at its London, Ohio facility and transferred to its St. Louis facility in 1997, where she remained employed until 2005. Dial employed plaintiff as Plant Financial Manager at its St. Louis facility. As a plant financial manager, plaintiff was responsible for directing/supporting the general financial operations of the plant, including but not limited to quarterly forecasts, budgeting, compliance with corporate schedules and reporting and initiating investment proposals. Plaintiff's skills included knowledge of generally accepted accounting principles, understanding financial statements and balance sheets and displaying strong analytical, managerial, interpersonal and computer abilities.

3

As a benefit of employment, Dial at all relevant times offered its employees the opportunity to participate in a Short Term Disability Plan that provides employees with temporary continuation of pay should the employee become "Disabled." The Dial STD plan was implemented to provide employees with income protection in the event the employee suffers a covered disabling condition that prevents the employee from performing his or her job. Regular full-time, non-union Dial employees are automatically enrolled in the STD plan after six months of continuous service. Employees eligible to participate in Dial's STD Plan are those who work for the Dial Corporation and are regular, full-time, salaried or non-union hourly employees who are scheduled to work at least forty (40) hours per week and have at least six (6) months of continuous service with Dial. Under the STD Plan, "disability" means that the employee has "a physical or mental impairment that keeps [the employee] from being able to perform any occupation that you are reasonably qualified to perform based on your education, training or experience. The Disability cannot be caused by your job."

After Dial's claims administrator approves an STD claim, benefits begin the day after the employee satisfies a seven (7) calendar day waiting period but are retroactive to the first day of disability. The STD plan vests Dial with the authority to administer and interpret the terms of the Plan, but also gives Dial the authority to delegate all or part of its authority and/or administrative duties under the Plan to a third party administrator. Dial delegated claims administration duties under the STD Plan to co-defendant LINA, a division of CIGNA, and LINA makes all claims determinations on STD claims made by Dial employees.

The STD Plan pays employees a weekly benefit in the event the employee becomes disabled up to the maximum benefit period of twenty-six (26) weeks. The amount of the STD benefit paid

under the STD Plan is based on the employee's years of service with Dial. The benefit amount can be either 100% or 66⅔% of the employee's weekly base salary, and is rounded to the next whole dollar. Under the STD Plan, once a claim is approved by the Claims Administrator, STD payments will be paid by Dial's payroll department. The Claims Administrator will advise the payroll department when to begin payments, the amount of payments, and the period of time for which the employee is eligible for payments.

At all relevant times, Dial paid for employee coverage in the STD Plan and reserved the right to modify, amend or terminate the STD Plan at any time. Plaintiff did not make any payments for her participation in Dial's STD Plan.

**Discussion**

    **A. Breach of Contract Claim**

In Count I, plaintiff asserts a claim for breach of contract in connection with the denial of STD benefits, based on the contention that the Dial STD Plan is a binding contract. Dial moves for summary judgment asserting that plaintiff cannot establish the elements of a breach of contract claim under Missouri law, because where an employer unilaterally offers a short term disability plan and reserves the right to modify or terminate the plan at any time, a contract does not exist.

Plaintiff responds that in exchange for her services and performance of her job duties, Dial provided her with salary and benefits, including short and long-term disability plans. Plaintiff states that she applied for STD benefits under the Plan, which states that it would provide her with "income protection in the event you suffer a covered Disabling condition that prevents you from performing your job." Plaintiff asserts that Dial breached the contract because she complied with

5

Plan requirements, including providing physician documentation of her diagnosis and disability, but Dial failed to pay her STD benefits.

Under Missouri law, a breach of contract claim consists of the "following essential elements: (1) a contract between the plaintiff and the defendant; (2) rights of the plaintiff and obligations of the defendant under the contract; (3) breach of the contract by the defendant; and (4) damages suffered by the plaintiff." Teets v. American Family Mut. Ins. Co., 272 S.W.3d 455, 461 (Mo. Ct. App. 2008) (cited case omitted).

The Court agrees with Dial that no contract for STD benefits existed between plaintiff and Dial. Under Missouri law, "Employer policies unilaterally imposed on at-will employees ( i.e., terms and conditions of employment) are not contracts enforceable at law." Morrow v. Hallmark Cards, Inc., 273 S.W.3d 15, 26 (Mo. Ct. App. 2008) (citing Johnson v. McDonnell Douglas Corp., 745 S.W.2d 661, 662 (Mo. banc 1988)).[1] "It is understood in such cases that the employer reserves the right to discontinue or modify such policies as it chooses." Id. (citing Johnson, 745 S.W.2d at 662). "[T]he only legally enforceable promise created out of at-will employment is the employer's promise, whether express or implied, to pay the employee for the work performed by the employee." Id.

There is some authority under Missouri law, predating the Missouri Supreme Court's Johnson decision, that a benefit offered gratuitously by an employer may become an enforceable

---

[1]In Johnson, the Missouri Supreme Court held that an employer's issuance of an employee handbook does not create an employment contract. Missouri courts have extended Johnson's holding beyond the at-will employment issue to the more general issue, relevant here, whether publication of an employee manual creates a contractual relationship between an employer and employee. See West Central Mo. Regional Lodge No. 50 v. Board of Police Commissioners of Kansas City, Mo., 939 S.W.2d 565, 568 (Mo. Ct. App. 1997).

6

contract. See, e.g., Martin v. Prier Brass Mfg. Co., 710 S.W.2d 466, 470 (Mo. Ct. App. 1986); Ehrle v. Bank Bldg. & Equip. Corp. of Am., 530 S.W.2d 482, 491 (Mo. Ct. App. 1975). If this authority survives Johnson, which the Court need not decide, plaintiff cannot establish the existence of an enforceable contract under the facts of this case. Under Missouri law, "For such [gratuitous] plans to become enforceable contracts, there must be notification to and knowledge of benefits on the part of the employee and consideration or continuance of employment in reliance on the plan." Ehrle, 530 S.W.2d at 491 (cited cases omitted).

> The "Introduction" section of the Dial STD Plan states in pertinent part:
>
> The Dial Corporation has the right to change, amend, modify or terminate the plan at any time, for any reason. If any part of a plan is changed or terminated, benefits you receive may not be the same as described in other parts of the plan's SPD. A change to or termination of a plan can happen at any time. You do not have vesting rights in this plan.
>
> Participation in this plan is not, and should not be considered, a contract of employment.

Dial STD Plan at 1.

In the instant case, although plaintiff knew of the STD Plan benefits offered by defendant, she cannot show consideration or continuance of her employment in reliance thereon. This is because plaintiff was aware of Dial's retained right to modify or terminate the Plan at any time. Plaintiff was also aware of the specific Plan language stating that employees did not have vesting rights in the Plan, and that participation in the Plan was not, and should not be considered, a contract of employment.

Where an employer retains the right to modify or eliminate an employee benefit plan at any time, as does Dial, a contract is not created because the employer's disclaimers evidence a clear intention not to create a contract. As a result, a reasonable employee could not interpret the Dial

7

STD Plan language as an offer to enter into a contractual relationship. See Johnson, 745 S.W.2d at 662 (where employee handbook contained general language and the employer reserved the power to alter it, "a reasonable at will employee could not interpret its distribution as an offer to modify his at will status. . . . Since [defendant] made no offer to its employees, no power of acceptance was created in the plaintiff."); Schoedinger v. United Healthcare of the Midwest, Inc., 2006 WL 3803935, at *4 (E.D. Mo. Nov. 6, 2006) (dismissing breach of contract claim under Missouri law based on alleged failure to pay healthcare benefits claims properly; holding under Johnson that defendant's online documents and Administrative Guide did not create a contract because the materials could not be interpreted as an offer to enter into a bargain, in part because they contained general language and notified the reader the claims procedures were subject to change in the future); Merriweather v. Braun, 792 F. Supp. 659, 662-63 (E.D. Mo. 1992) (granting summary judgment on breach of contract claim under Missouri law based on employer's refusal to reimburse employee's law school tuition; employee manuals and reimbursement forms were not offers or contracts because they placed the discretion to reimburse an employee entirely in the employer's discretion); West Central Mo. Regional Lodge No. 50 v. Board of Police Comm'rs of Kansas City, Mo., 939 S.W.2d 565, 568 (Mo. Ct. App. 1997) (breach of contract claim concerning salary adjustments properly dismissed where employee manual was not a contractual offer, in part because the employer preserved the power to modify the manual or exercise discretion in applying certain provisions).

Numerous federal courts interpreting similar disclaimers in short-term disability plans, i.e., that STD plan documents are not intended to constitute an employment contract and can be modified or terminated at any time, have held under various states' laws that the disclaimers foreclose the possibility a reasonable person could interpret the plan language as giving rise to a contract. See,

e.g., Wilkes v. Electronic Data Sys., Inc., 267 F. App'x 661, 662 (9th Cir. 2008) (applying Arizona law); Hirth v. Metropolitan Life Ins. Co., 189 F. App'x 292, 293 (5th Cir. 2006) (applying Texas law); Norberry v. Life Ins. Co. of North Am., 2009 WL 259371, at **11-12 (M.D. Tenn. Feb. 4, 2009) (applying Tennessee law); Diehl v. Electronic Data Sys. Corp., 2008 WL 2705540, at **4-5 (M.D. Pa. July 10, 2008) (applying Pennsylvania law); Cooper v. Broadspire Servs., Inc., 2005 WL 1712390, at *3 (E.D. Pa. July 20, 2005) (applying Pennsylvania law).

Without an offer there can be no contract, and without a contract there can be no cause of action for breach of contract. There was no offer made to plaintiff in this case with respect to short-term disability benefits, and no contract was formed as a result of plaintiff's employment with Dial. Dial is therefore entitled to summary judgment on plaintiff's breach of contract claim in Count I.

## B. Vexatious Refusal to Pay Claim[2]

In Count II, plaintiff asserts a claim against Dial for vexatious refusal to pay her the STD benefits. Dial moves for summary judgment on this claim on the basis that plaintiff cannot state a claim against it under Missouri's vexatious refusal statute[3] because the statute only provides for a cause of action against an insurance company to recovery an amount of loss under an insurance policy, and it is not an insurance company, it is not a party to an insurance contract with plaintiff,

---

[2]In its reply memorandum, Dial asserts that plaintiff admitted she no longer wished to maintain claims against it for vexatious refusal, prima facie tort, or punitive damages, citing plaintiff's response to ¶ 145 of Dial's Statement of Uncontroverted Material Facts. This is incorrect and is apparently based on a misreading of plaintiff's response. Paragraph 145 states, "Plaintiff's First Amended Complaint purports to state causes of action against Dial for Breach of Contract, Vexatious Refusal, Prima Facie Tort and Punitive damages." Plaintiff responded, "Plaintiff objects to ¶ 145 as an uncontroverted fact and Plaintiff further states that her First Amended Complaint does state the aforementioned causes of action. Against Dial."

[3]Missouri Revised Statutes § 375.420 (2000).

9

and it had reasonable justification for all actions it took with respect to plaintiff's claims for disability benefits. Plaintiff did not respond to Dial's arguments on Count II in its reply memorandum.

The vexatious refusal statute provides:

> In any action against any **insurance company** to recover the amount of any loss under a policy of automobile, fire, cyclone, lightning, life, health, accident, employers' liability, burglary, theft, embezzlement, fidelity, indemnity, marine, or other insurance except automobile liability insurance, if it appears from the evidence that such company has refused to pay such loss without reasonably cause or excuse, the court or jury may, in addition to the amount thereof and interest, allow the plaintiff damages not to exceed twenty percent of the first fifteen hundred dollars of the loss, and ten percent of the amount of the loss in excess of fifteen hundred dollars and a reasonably attorney's fees; and the court shall enter judgment for the aggregate sum found in the verdict." (Emphasis added).

Mo. Rev. Stat. § 375.420. In addition to satisfying these statutory requirements, to prevail on a claim for vexatious refusal, a plaintiff must prove (1) the existence of an insurance policy with the defendant; (2) the defendant's refusal to pay under the policy; and (3) that such refusal was without any reasonable cause or excuse. Columbia Mut. Ins. Co. v. Long, 258 S.W.3d 469, 477 (Mo. Ct. App. 2008). Missouri statutes authorizing damages and attorney's fees for vexatious refusal to pay are highly penal in nature and must be strictly construed. State ex rel. United States Fidelity & Guaranty Co. v. Walsh, 540 S.W.2d 137, 141 (Mo. Ct. App. 1976).

It is uncontroverted that defendant Dial is not an insurance company. The plain language of the statute provides that a cause of action for vexatious refusal to pay exists only against an insurance company. See Mo. Rev. Stat. § 375.420. There is also no insurance policy in this case, as the Court has found that Dial's STD Plan is an employer benefit policy. As a result, plaintiff's vexatious refusal to pay claim must fail, and defendant is entitled to summary judgment.

**C. Prima Facie Tort Claim**

In Count III, plaintiff asserts a claim against Dial for prima facie tort. Dial moves for summary judgment asserting that plaintiff cannot establish the required elements of the tort. Plaintiff did not respond to Dial's motion for summary judgment on her prima facie tort claim.

The elements of prima facie tort under Missouri law are (1) an intentional lawful act by the defendant; (2) the defendant's intent to cause injury to the plaintiff; (3) injury to the plaintiff; and (4) the absence of any justification or insufficient justification for the defendant's act. Nazeri v. Missouri Valley College, 860 S.W.2d 303, 315 (Mo. 1993) (en banc). Plaintiffs asserting claims of prima facie tort must "demonstrate that they have substantial evidence on each of the four elements." Killion v. Bank Midwest, N.A., 987 S.W.2d 801, 808 (Mo. Ct. App. 1998). To determine whether a submissible case of prima facie tort has been made out, Missouri courts utilize a two-step process. LPP Mortgage, Ltd. v. Marcin, Inc., 224 S.W.3d 50, 54 (Mo. Ct. App. 2007). "The first step requires an assessment of whether the four essential elements of prima facie tort have been pled and proved, and the second step requires that the court balance the defendant's alleged bad motive against any claimed justification for its actions." Id.

"Missouri courts, while recognizing prima facie torts at least nominally, do not look upon them with favor and have consistently limited the application of the prima facie tort." Hertz Corp. v. Raks Hospitality, Inc., 196 S.W.3d 536, 549 (Mo. Ct. App. 2006) (citing Catron v. Columbia Mut. Ins. Co., 723 S.W.2d 5, 6 (Mo. 1987) (en banc)). Further, the claim of prima facie tort "is not a duplicative remedy for claims that can be sounded in other traditionally recognized tort theories, or a catchall remedy of last resort for claims that are not otherwise salvageable under traditional causes of action." Nazeri, 860 S.W.2d at 315.

Dial asserts that plaintiff cannot prevail on her prima facie tort claim because (1) she cannot show that Dial took any actions with the intent to injure her; (2) she had other theories of recovery potentially available to her including breach of contract and negligent or intentional infliction of emotional distress; and (3) she is attempting to use prima facie tort to salvage a now time-barred claim she could have pursued under the Americans with Disabilities Act.

Under Missouri law, a defendant's mere awareness that its conduct would cause harm is insufficient to prove an actual intent to injure, as required to recover on a theory of prima facie tort. Thomas v. Special Olympics of Missouri, Inc., 31 S.W.3d 442, 450 (Mo. Ct. App. 2000). The plaintiff must present evidence that the defendant acted with "specific, clear-cut, express malicious intent to injure; mere intent to do the act which results in injury is not sufficient." Woolsey v. Bank of Versailles, 951 S.W.2d 662, 669 (Mo. Ct. App. 1997); see also J.S. DeWeese Co. v. Hughes-Treitler Mfg. Corp., 881 S.W.2d 638, 646 (Mo. Ct. App. 1994) ("Spite or ill-will is necessary to satisfy the requisite intent.").

Plaintiff fails to point to anything in the record from which a jury could conclude that Dial specifically intended to injure her when it denied her application for STD benefits. Plaintiff's "burden to submit evidence on this element is a heavy one," Woolsey, 951 S.W.2d at 669, and her failure to do so warrants the entry of judgment as a matter of law in favor of Dial. Because this issue is dispositive, the Court does not address Dial's other arguments in support of summary judgment on the prima facie tort claim.

**D. Punitive Damages Claim**

Plaintiff asserts a claim for punitive damages in Count IV based on her claims for breach of contract in Count I, vexatious refusal in Count II, and prima facie tort in Count III. Dial moves for

12

summary judgment on the basis that if judgment is granted in its favor on the other claims, plaintiff has no cause of action upon which to base such an award.

In Missouri, an award of actual damages is a necessary prerequisite for any award of punitive damages. Compton v. Williams Bros. Pipeline Co., 499 S.W.2d 795, 797 (Mo. 1973) (citations omitted). The Court has determined that Dial is entitled to summary judgment on plaintiff's state law claims in Counts I, II and III. Punitive damages are not available under ERISA. See Mertens v. Hewitt Assocs., 508 U.S. 248 (1993) (only "equitable relief" is available under 29 U.S.C. § 1332); Howe v. Varity Corp., 36 F.3d 746, 753 (8th Cir. 1994) ("Only equitable relief, as opposed to damages, is available under ERISA . . . and punitive damages are not, by any stretch of the imagination, equitable relief."). Dial is therefore entitled to summary judgment on Count IV.[4]

### E. ERISA Denial of Long-Term Disability Benefits Claim

Plaintiff asserts a claim under ERISA for denial of long-term disability benefits in Count V. Dial's motion for summary judgment on Count V will be denied for the reasons stated in the separate Memorandum and Order of this date which addresses plaintiff and defendant LINA's cross-motions for summary judgment on Count V.

---

[4]The Court notes that a claim for punitive damages is not a separate cause of action, although it is stated in a separate count in the First Amended Complaint. "There is no independent cause of action for punitive damages under either federal or Missouri law; punitive damages are a type of recovery available in some instances but not others." Jackson v. Wiersema Charter Servs., Inc., 2009 WL 1310064, at *3 (E.D. Mo. May 11, 2009) (quoted case omitted; citing cases). See also Jones v. Housing Auth. of Kansas City, Mo., 118 S.W.3d 669, 675 (Mo. Ct. App. 2003) ("Exemplary damages do not and cannot exist as an independent cause of action, but such damages are mere incidents to the cause of action and can never constitute the basis thereof.") (quoted case omitted). Count IV therefore fails to state a claim upon which relief can be granted.

**Conclusion**

For the foregoing reasons, the Court finds and concludes that defendant Dial's motion for summary judgment should be granted on plaintiff's claims in Counts I, II, III and IV of the First Amended Complaint. Dial's motion for summary judgment on Count V should be denied.

Accordingly,

**IT IS HEREBY ORDERED** that defendant The Dial Corporation's motion for summary judgment is **GRANTED in part** and **DENIED in part**; said motion is **GRANTED** as to plaintiff's state law claims in Counts I, II, III and IV, and **DENIED** as to plaintiff's ERISA claim in Count V. [Doc. 39]

An appropriate partial judgment shall accompany this memorandum and order.

/s/ Charles A. Shaw
**CHARLES A. SHAW**
**UNITED STATES DISTRICT JUDGE**

Dated this  19th  day of January, 2010.